[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-11799

_____

D. C. Docket No. 00-00577-CV-C-S

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 31, 2002**
**THOMAS K. KAHN**
**CLERK**

ELISABETH GLAZNER,

Plaintiff-Appellant,

versus

JAMES GLAZNER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(December 31, 2002)**

Before CARNES, HULL and ALARCON[*], Circuit Judges.

_____

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

CARNES, Circuit Judge:

While their divorce proceeding was pending, a husband put a recording device on a telephone in the marital home. The device recorded a number of conversations between his wife and third parties without the consent of any party to the conversations. She discovered the device and filed a lawsuit against her husband. In contrast to her husband's successful effort to obtain a divorce, the wife's lawsuit against him for covertly recording her conversations with others has not succeeded thus far.

The federal claim alleged in the wife's lawsuit is based on the wiretapping provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22. Parts of that Act outlaw non-consensual recordings of private conversations, subject to certain specified exceptions, and authorize civil remedies on behalf of those who suffer violations of the statutory provisions. The plain language of the statute prohibits "any person" from making recordings of private conversations in which no party consents and authorizes "any person" whose conversation is recorded in violation of the prohibition to recover damages. Despite those clear statutory provisions, Simpson v. Simpson, 490 F. 2d 803 (5th Cir. 1974), a twenty-eight year old decision of this Court's predecessor, held that the statute does not apply if the "any persons" are spouses of each other, the

2

conversations that are covertly recorded occur over a telephone in the marital home, and the recording is accomplished without the connivance of any outside party.

Applying the Simpson decision in this case, the district court dismissed the wife's Title III claim against her husband. We think it clear that the district court was required to take that action by the Simpson decision, and just as clear that the Simpson decision is wrong. It ought to be overruled, and we would if we could.

## I. BACKGROUND

James and Elisabeth Glazner were married in July of 1980. James filed for divorce in February of 1999. Before the divorce was finalized on June 6, 2000, but while he was still living with Elisabeth, James bought a recording device from Radio Shack, attached it to a phone line in the marital home, and hid the device underneath an oak display case. The next day he left on a trip. While he was gone, his wife used the phone and her conversations with others were recorded without the consent of any party to the conversations. (The nature of the conversations that were recorded is not disclosed in the record.)

During one of those conversations, Elisabeth Glazner noticed the phone "sounded hollow" which prompted her to check all of the phones in the house. The resulting search turned up the recording device. She removed the tape and took it

3

to her neighbors to see if they knew how to erase it. They advised her to keep the tape as it was, which she did. She called the police, who came and removed the recording device from the telephone line.

Before the divorce was finalized, Elisabeth Glazner filed suit against James in the United States District Court for the Northern District of Alabama, claiming that he had violated her rights under 18 U.S.C. § 2511 by recording her telephone conversations with other parties without consent, and seeking damages from him under 18 U.S.C. § 2520. The Simpson decision read an interspousal exemption into those provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, and it was on that basis the district court entered summary judgment against Elisabeth on her sole federal claim. She also had a number of state law claims which the district court dismissed without prejudice under 28 U.S.C. § 1367(c).

## II. DISCUSSION

Elisabeth Glazner argues that her case is distinguishable from Simpson because James had already filed for divorce when he recorded her conversations, while in the Simpson case neither party filed for divorce until after the recording occurred.[1] In support of her argument, Elisabeth points out that the Simpson

---

[1]It is not entirely clear from the Simpson opinion that a divorce proceeding was not already underway at the time the recordings were made in that case. The opinion says that after

4

opinion expressly limits its holding to the facts presented in that case: "Our decision is, of course, limited to the specific facts of this case." 490 F.2d at 810. But that is a characteristic, whether expressed or not, of every decision (hence the Simpson opinion's "of course" notation). See, e.g., United States v. Aguillard, 217 F. 3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.") (citation omitted). The rub comes in determining which facts are material to a decision and thereby frame the rule that decision establishes. The Simpson court thought that the facts material to the rule of its decision were that the recording occurred in the marital home and no one was involved in it other than the spouse of the victim. Immediately after cautioning that its decision was limited to the specific facts of the case, the Simpson opinion states by negative implication what those facts are: "No public official is involved, nor is any private person other than [the husband], and the locus in quo does not extend beyond the marital home of the parties." 490 F.2d at 810.

---

he made the recordings the husband "played them for a lawyer, on whose advice the wife agreed to an uncontested divorce." 490 F.2d at 804. Elisabeth Glazner infers from that statement that neither party had filed for a divorce prior to that time, and she may be right. Since it does not matter anyway, we will assume that she is right – that no divorce proceeding was pending at the time the alleged violation of Title III occurred in the Simpson case.

Having studied the <u>Simpson</u> decision carefully, we agree with that panel's own appraisal of the rule established by the results of the appeal read against the facts of that case. The rule of the <u>Simpson</u> decision is that there is an interspousal exemption to Title III's prohibitions against non-consensual recordings, at least where the recording device is attached to a phone in the marital home and no outside parties are involved in making the recording. The fact that a divorce proceeding was not pending at the time of the recording in <u>Simpson</u> is not necessary to the result in that case, either from any indication in the opinion itself or logically. If preservation of marital peace and harmony were the rationale of <u>Simpson</u>, there would be little point to the result reached, because when the lawsuit in that case was filed the parties were already divorced. That case and this one illustrate the obvious about the state of matrimony in these kind of cases: by the time one spouse gives the other a basis for a Title III claim it is all over but the shouting, and there has probably been a good bit of that, too.

James Glazner, like John Simpson, recorded his wife's conversations over a phone line in the home where the two of them were living together and sharing a common phone line, and while they were still married. Under the <u>Simpson</u> decision, James' actions did not violate 18 U.S.C. § 2511, so Elisabeth may not recover any damages from him under 18 U.S.C. § 2520.

Elisabeth Glazner argues that the <u>Simpson</u> decision ought to be overruled. We as a panel cannot do that. Under the prior panel precedent rule we, no less than the district court, are bound to follow the <u>Simpson</u> decision unless and until it is overruled by this Court sitting en banc or by the Supreme Court. <u>Saxton v. ACF Indus., Inc.</u>, 254 F.3d 959, 960 n.1 (11th Cir. 2001) (en banc); <u>United States v. Steele</u>, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc); <u>Smith v. GTE Corp.</u>, 236 F. 3d 1292, 1300 n.8 (11th Cir. 2001); <u>see</u> <u>also</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent Fifth Circuit decisions issued prior to October 1, 1981). As Elisabeth points out, the <u>Simpson</u> court did express doubts about its conclusion, <u>id.</u> at 810 ("we are not without doubts about our decision"), but we do not subtract from the force of the prior precedent rule the weight of any doubts expressed at the time the earlier decision was announced or since. For purposes of the rule, a prior decision has either been overruled or it has not, and the <u>Simpson</u> decision has not.

Although we are bound by the prior panel precedent rule to follow <u>Simpson</u> regardless of our misgivings about it, we are not required to agree with that decision, <u>see, e.g.</u>, <u>Saxton v. ACF Indus., Inc.</u>, 239 F. 3d 1209, 1215 (11th Cir. 2001), <u>rev'd en banc</u>, 254 F. 3d 959 (11th Cir. 2001); <u>Turner v. Beneficial Corp.</u>,

236 F. 3d 643, 649-50 (11th Cir. 2000), <u>rev'd en banc</u>, 242 F. 3d 1023 (11th Cir. 2001), <u>cert. denied</u>, --- U.S. ---, 122 S. Ct. 51 (2001), and we don't.

The plain language of Title III clearly encompasses the factual circumstances of this case, it manifestly forbids what James Glazner did to Elisabeth Glazner, and it unequivocally gives her a cause of action against him. The pertinent provisions state that: "[e]xcept as otherwise specifically provided in this chapter <u>any</u> person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, <u>any</u> wire, oral, or electronic communication" violates the Act. 18 U.S.C. § 2511(1)(a) (emphasis added). It is undisputed that none of the statutory exceptions referred to in the introductory clause of that provision applies in this case. <u>See</u> <u>also</u> <u>Simpson</u>, 490 F.2d at 804-05 (recognizing that none of the statutorily stated exceptions were relevant to the identical factual circumstances in that case). And the statute expressly gives "<u>any</u> person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" the right to bring a civil action against "the person or entity which engaged in that violation." 18 U.S.C. § 2520(a) (emphasis added). Elisabeth is "any person" within the meaning of § 2520(a), James is "any person" within the meaning of § 2511(1)(a), and the conversations of

8

hers that he caused to be intercepted and recorded are "any wire, oral, or electronic communication" within the meaning of that same subdivision.

The language of Title III makes no distinction between married and unmarried persons, between spouses and strangers. It plainly applies to "any person" on both sides of the violation (save only the inapplicable exceptions). We have repeatedly held that the word "any" is unambiguous, noting the Supreme Court's observation in United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997), that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind,'" and where Congress uses the word "any" without limiting language it must be read to mean "all." See Broward Gardens Tenants Ass'n v. U.S. Envtl. Prot. Agency, 311 F.3d 1066, 1075 (11th Cir. 2002); CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1223 (11th Cir. 2001); Coronado v. Bankatlantic Bancorp, Inc., 222 F.3d 1315, 1321 (11th Cir. 2000); Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997). Simply put, "any" means all of the noun class that follows; it does not mean "all except some." Thus, under the plain meaning of the language Congress chose to use in Title III, the status of the plaintiff and defendant as husband and wife when the recordings occurred is irrelevant, as is the fact that the recording device was attached to a phone in the house they shared at that time.

9

The Simpson court did not pretend otherwise about the plain meaning of the statutory language. It recognized that "the naked language of Title III, by virtue of its inclusiveness, reaches this case." 490 F.2d at 805. Apparently unsettled by the sight, the court set about to clothe that naked language in legislative history and policy considerations. That it should not have done.

"[W]e must presume that Congress said what it meant and meant what it said." Steele, 147 F. 3d at 1318; accord United States v. LaBonte, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677 (1997) ("[W]e assume that in drafting legislation, Congress said what it meant."). Accordingly, "[w]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc). In the words of the Supreme Court, even if "[t]here are . . . contrary indications in the statute's legislative history . . . we do not resort to legislative history to cloud a statutory text that is clear." Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S. Ct. 655, 662 (1994); accord Gonzales, 520 U.S. at 6, 117 S. Ct. at 1035 ("Given [a] straightforward statutory command, there is no reason to resort to legislative history."). That is why the Supreme Court and this Court have said that the first canon of statutory construction is the plain meaning doctrine, and when the words

10

of a statute are unambiguous that first canon is also the last, because the judicial inquiry is complete. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992); CBS, Inc., 245 F.3d at 1222; Merritt, 120 F.3d at 1186.

The one exception to the plain language doctrine, the one circumstance in which a court may properly look beyond what Congress has clearly said, is where giving effect to the plain language Congress used would lead to a truly absurd result.  United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001);  Merritt, 120 F.3d at 1188.  The Simpson court did not suggest that the absurdity exception applied to prevent Title III's provisions from governing interspousal behavior, and no one in this case has suggested it does either.  It is not truly absurd for Congress to have decided that one spouse should not be permitted to record without consent electronically transmitted conversations between the other spouse and third parties, which is what the plain language of Title III shows Congress decided.

The Simpson court did not stop with the plain language of Title III as it should have, but after acknowledging the inescapable meaning of that language, it proceeded to attempt an escape based upon its own view that regardless of what Congress had said, "Congress did not intend such a far reaching result, one extending into areas normally left to states,  those of the marital home and domestic conflicts."  490 F.3d at 805 (footnote omitted).   In seeking relief from the plain

11

meaning of the statutory language the <u>Simpson</u> court scoured the legislative history of Title III, but found nothing to affirmatively support its thesis that Congress really did not intend to prohibit interspousal wiretapping.  In fact, the few indications about this matter in the legislative history show an awareness that use of covert recording devices in domestic relations or marital situations was widespread and unjustified.  <u>See</u> <u>id.</u> at 807 n.11 (quoting testimony at a committee hearing that one of the two major uses of electronic surveillance equipment was in domestic relations investigations); <u>id.</u> at 808  n.14 (quoting an article reprinted in one hearing transcript which, in discussing the use of electronic "bugs" in civil litigation, stated that "[t]he prime area for this is divorce actions," and reported that "bugs are routinely discovered under the beds of estranged husbands and wives who suspect each other of errant ways"); <u>see</u> <u>also</u> <u>id.</u> at 807 n.12 (quoting Senator McClellan, during hearings on the matter, expressing the view that the legislative prohibition of electronic surveillance should "go as far as it is possible to go, to absolutely outlaw it, except in such cases as Congress may, in its wisdom, permit wiretapping under orders of a Court," and quoting Senator Long as responding: "I agree with you entirely that there should be a very, very, strict law prohibiting wiretapping.").

Even though each specific discussion of the matter it could find in the legislative history lends  no support to its theory, and actually seems to point the

12

other way, the Simpson court still concluded that Congress did not mean what it said because the legislative history does not sufficiently corroborate, in that court's view,  the plain meaning of  the statutory language Congress chose to express its intent.  See id. at 809 (acknowledging that statements in the legislative history "suggest congressional awareness that private individuals were using electronic surveillance techniques within their own homes,"  but concluding that "they do not support the proposition that Congress was concerned that such activities took place").  The Simpson court essentially reasoned that Congress did not intend what it said in the statute because it did not say the same thing with equal clarity in the legislative history.  See id. at 805.  That reasoning turns legislative interpretation upside down.  There is no requirement that Congress, in order to prevent judicial re-writing of statutes, must not only speak in a clear and straightforward manner in statutes but must also lard the legislative history with statements proving that it really, really did  mean what it said in each statute.  It is not the function of the judiciary to determine whether Congress has devoted enough thought and consideration to what it has enacted.  We are to apply statutes, not reconsider them.

Towards the end of its opinion, the Simpson court put forward two "other considerations" to justify its decision.  Neither one does.  The first  "other consideration" is that Title III provides an exception from its provisions for a

13

telephone "being used by the subscriber or user in the ordinary course of its business," by excluding those telephones from the definition of an "electronic, mechanical, or other device." 18 U.S.C. § 2510(5)(a)(i); see Simpson, 490 F.2d at 809. What the exception means is that listening in on an extension is not prohibited, whether at home or at work, and that is true regardless of whether the conversation being overheard involves a spouse. Of course, that is not the type of eavesdropping that was involved in the Simpson case or in this case; the husband in neither case listened in on an extension phone.

Nonetheless, the Simpson court thought the § 2510(5)(a)(i) exception, although not applicable, was "indicative of Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home vis-a-vis each other." 490 F.2d at 809. We do not think the exception for extension phones indicates that other ways of listening in on conversations are permissible in the domestic relations context any more than it indicates other methods are permissible in the business context. Instead, what the § 2510(5)(a)(i) exception shows is that Congress knew how to remove from the scope of the statute conduct that it did not want covered. And Congress did not exempt interspousal electronic surveillance. It could have done so quite easily, but it didn't.

14

The second "other consideration" the <u>Simpson</u> opinion proffers is that criminal statutes should be strictly construed, a canon of construction known as the rule of lenity. <u>Id.</u> But the rule of lenity applies only where there is an ambiguity in the statute; it cannot be employed to override clear statutory language. <u>See</u> <u>United States v. Ortega-Torres</u>, 174 F. 3d 1199, 1201 n.1 (11th Cir. 1999); <u>United States v. Sepulveda</u>, 115 F. 3d 883, 887 n.11 (11th Cir. 1997) (rule of lenity "has no application where the fair meaning of the statute is clear"). Because Title III is not ambiguous about whether it applies to "any person" covertly recording without consent the conversation of "any person," the rule of lenity has no play in this case.

<u>Simpson</u> was the first federal court of appeals decision in the country to address the issue of whether Title III's prohibitions apply to electronic eavesdropping between spouses using a telephone found in the marital home. A clear majority of courts to address the issue since then have disagreed with <u>Simpson</u>. <u>See</u> <u>Heggy v. Heggy</u>, 944 F.2d 1537 (10th Cir. 1991) (Title III applies between spouses); <u>Kempf v. Kempf</u>, 868 F.2d 970 (8th Cir. 1989) (same); <u>Pritchard v. Pritchard</u>, 732 F.2d 372 (4th Cir. 1984) (same); <u>United States v. Jones</u>, 542 F.2d 661 (6th Cir. 1976) (same); <u>Ex Parte O'Daniel</u>, 515 So. 2d 1250 (Ala. 1987) (same); <u>People v. Otto</u>, 831 P. 2d 1178 (Cal. 1992) (same); <u>Rickenbaker v. Rickenbaker</u>, 226 S.E. 2d 347 (N.C. 1976) (same); <u>Pulawski v. Blais</u>, 506 A. 2d 76

(R.I. 1986) (same); <u>W.Va. Dep't of Health & Human Resources ex rel. Wright v. David L.</u>, 453 S.E. 2d 646 (W.Va. 1994) (same).  <u>But see</u> <u>Anonymous v. Anonymous</u>, 558 F. 2d 677 (2d Cir. 1977) (Title III does not apply between spouses); <u>Stewart v. Stewart</u>, 645 So. 2d 1319 (Miss. 1994) (same); <u>Baumrind v. Ewing</u>, 279 S.E. 2d 359 (S.C. 1981) (same).  And so do we.

That the <u>Simpson</u> decision has managed to survive as the law of this circuit for nearly three decades shows that inertia is more than just a law of physics.  The time has come to overturn that decision, and rehearing en banc should be granted in this case for that purpose. Until then, we are required to affirm the district court's grant of summary judgment against Elisabeth Glazner.[2]

AFFIRMED.

---

[2]We express no opinion on whether, if en banc rehearing is granted and the <u>Simpson</u> decision is overturned, the new rule ought to be applied in this case or prospectively only.  <u>See generally</u> <u>Wagner v. Daewoo</u>, __ F.3d __, (11th Cir. Dec. 10, 2002)(en banc)(applying prospectively only the new rule established when the en banc court overturned prior precedent in that case); <u>McKinney v. Pate</u>, 20 F.3d 1550, 1565 - 66 (11th Cir. 1994)(en banc)(applying retroactively the new rule established when the en banc court overturned prior precedent in that case).