DUBINA, Circuit Judge:
We took this case en banc to decide the continued validity of Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974),[1] a decision of our predecessor circuit finding an implied exception in Title III of the Omnibus Crime Control and Safe Streets Acts of 1968 (“Title III”) for interspousal wiretapping within the marital home. For the reasons that follow, we overrule the Simpson decision. We also conclude that the rule we announce today applies retroactively.
I. BACKGROUND
The facts and procedural history of this case are taken largely from the panel decision. See Glazner v. Glazner, 330 F.3d 1298 (11th Cir.2002), vacated, 321 F.3d 1336 (11th Cir.2003).[2]
*1214 After being married 19 years, James Glazner (“James”) filed for divorce against his wife, Elisabeth Glazner (“Elisabeth”). During the divorce proceedings, James put a recording device on a telephone in the marital home. The device recorded a number of conversations between Elisabeth and third parties without the consent of any party to the conversations. Elisabeth discovered the device and filed a complaint in the United States District Court for the Northern District of Alabama against James seeking damages as a result of an alleged violation of Title III, and damages for a number of state law claims.
Elisabeth based her federal claim on the wiretapping provisions of Title III, 18 U.S.C. §§ 2510-22. Parts of that law prohibit non-consensual recordings of private conversations, subject to certain specified exceptions, and authorize civil remedies on behalf of those who suffer violations of the statutory provisions. During the course of the litigation, James filed a motion for summary judgment. Notwithstanding a finding by the district court that James wiretapped Elisabeth’s conversations with third parties, the district court granted James’s motion for summary judgment based on Simpson, which read an inter-spousal exemption into the provisions of Title III. The district court dismissed Elisabeth’s state law claims without prejudice under 28 U.S.C. § 1367(c).
Elisabeth filed a timely notice of appeal of the district court’s judgment. Even though the panel opinion was critical of the Simpson decision and concluded that it should be overruled, the panel recognized that under the prior panel precedent rule, the panel was bound to follow the Simpson decision unless and until it was overruled by this court sitting en banc or by the Supreme Court. See Saxton v. ACF Indus., Inc., 254 F.3d 959, 960 n. 1 (11th Cir.2001) (en banc); Smith v. GTE Corp., 236 F.3d 1292, 1300 n. 8 (11th Cir.2001); United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir.1998) (en banc). Based on Simpson, the panel decision affirmed the district court’s grant of summary judgment in favor of James. We subsequently entered an order granting Elisabeth’s petition for rehearing and vacating the panel opinion. See Glazner, 321 F.3d at 1336.
II. ISSUES
The en banc court directed counsel to brief the following issues:
' (1) Should the rule announced in Simpson v. Simpson, 490 F.2d 803 (5th Cir.1974), be overturned?
(2) If so, should the new rule be applied in this case?,
III. DISCUSSION
A. Simpson v. Simpson
Title III broadly prohibits the interception of wire communications. See 18 U.S.C. § 2511. To determine whether or not James’s actions constitute a violation of Title III, we must first look to the language of the statute itself. United States v. Kirkland, 12 F.3d 199, 202 (11th Cir.1994) (citing United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). Title III states:
(1) Except as otherwise specifically provided in this chapter any person who— (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished ... or shall be subject to suit....
18 U.S.C. § 2511 (emphasis added). Neither party disputes that none of the statutory exceptions to which subsection (1) refers applies in this case. See also Simpson, 490 F.2d at 804-05 (recognizing that none of the statutorily stated excep *1215 tions applied to circumstances .factually identical to the present case). The statute expressly gives “any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter” the right to bring a civil action against “the person or entity ... which engaged in that violation.” 18 U.S.C. § 2520(a) (emphasis added).
In the present case, Elisabeth is “any person” within the meaning of § 2520(a). James is “any person” within the meaning of § 2511(l)(a). Finally, Elisabeth’s conversations that James caused to be intercepted and recorded are any “wire, oral, or electronic communication” within the meaning of § 2520(a).
The language of Title III is clear and unambiguous. It makes no distinction between married and unmarried persons or between spouses and strangers. It plainly applies to “any person” on both sides of the violation (save only the inapplicable exceptions).
The one circumstance in which a court may properly look beyond the plain language of a statute is where giving effect to the language used by. Congress would lead to a truly absurd result. United States v. Maung, 267 F.3d 1113, 1121 (11th Cir.2001); Merritt v. Dillard Paper Co., 120 F.3d 1181, 1188 (11th Cir.1997). Neither the court in Simpson nor any of the parties in this case suggest that the absurdity exception applies to prevent Title Ill’s provisions from governing interspousal behavior. The language of Title III demonstrates that Congress decided that one spouse should not be permitted to record, without consent, electronically transmitted conversations between the other spouse and third parties. This prohibition is not truly absurd.
Equally compelling is the fact that, since the Fifth Circuit decided Simpson nearly three decades ago, an overwhelming majority of the federal circuit and district courts, as well as state courts, addressing the issue have refused to imply an exception to Title III liability for interspousal wiretapping. See Heggy v. Heggy, 944 F.2d 1537, 1539 (10th Cir.1991) (concluding that Title III applies to interspousal wiretapping); Kempf v. Kempf, 868 F.2d 970, 972-73 (8th Cir.1989) (same); Pritchard v. Pritchard, 732 F.2d 372, 374 (4th Cir.1984) (same); United States v. Jones, 542 F.2d 661, 667 (6th Cir.1976) (same); Gill v. Willer, 482 F.Supp. 776, 778 (W.D.N.Y.1980) (finding the reasoning in Simpson to be unpersuasive); Kratz v. Kratz, 477 F.Supp. 463, 473-75 (E.D.Pa.1979) (rejecting Simpson as contradictory to the explicit language of the statute and clear intent of Congress); Remington v. Remington, 393 F.Supp. 898, 901 (E.D.Pa.1975) (finding that a husband had asserted a valid civil cause of action against his wife for the installation of a wiretapping device); Ex parte O’Daniel, 515 So.2d 1250, 1253 (Ala.1987) (same); People v. Otto, 2 Cal.4th 1088, 9 Cal.Rptr.2d 596, 831 P.2d 1178, 1185 (1992) (same); Rickenbaker v. Rickenbaker, 290 N.C. 373, 226 S.E.2d 347, 352 (1976) (same); Pulawski v. Blais, 506 A.2d 76, 77 n. 2 (R.I.1986) (same); W. Va. Dep’t of Health & Human Res. ex rel. Wright v. David L., 192 W.Va. 663, 453 S.E.2d 646, 652 (1994) (same). But see Anonymous v. Anonymous, 558 F.2d 677, 679 (2d Cir.1977) (holding that the facts of that case involving interspousal wiretapping did not constitute a violation of Title III, but noting that the court did not suggest “that a plaintiff could never recover damages from his or her spouse under the Federal wiretap statute”); Stewart v. Stewart, 645 So.2d 1319, 1321 (Miss.1994) (concluding that Title III does not apply to domestic relations cases); Baumrind v. Ewing, 276 S.C. 350, 279 S.E.2d 359, 360 (1981) (same).
We are persuaded by the reasoning of all the courts which have refused to find an *1216 exception for interspousal wiretapping either explicitly in the text of Title III or implicitly in the legislative history.[3] While we agree with the dissenters that the concept of the rule of law underlying our Constitution requires a substantial measure of continuity, certainty, and respect for precedent, we must follow the Supreme Court’s instruction that stare decisis should be abandoned where, as here, “a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed.” Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992); see also Lawrence v. Texas, — U.S. -, 123 S.Ct. 2472, 2483-84, 156 L.Ed.2d 508 (2003) (recognizing the essential role of stare decisis but nonetheless overruling Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986)). Therefore, we hold that no exception for inter-spousal wiretapping exists in Title III. Accordingly, we overrule Simpson.
B. Prospective or Retroactive Application
We now turn to the question of whether we should apply the rule that we announce today retroactively or prospectively. “Generally, new rules of law are applied retroactively as well as prospectively.” Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 544 (11th Cir.2002) (en banc). However, in 1971, the Supreme Court allowed for prospective-only application of newly announced rules in civil cases. See Chevron Oil Co. v. Huson, 404 U.S. 97, 105-109, 92 S.Ct. 349, 354-356, 30 L.Ed.2d 296 (1971). Under Chevron Oil, a court must look to the following factors to determine whether to reject retroactive application of a new decision in favor of purely prospective application:
First, the decision to be applied nonret-roactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second ... [a court must look] to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation .... [Third, a court must look to] the inequity imposed by retroactive application. ...
Id. at 106-107, 92 S.Ct. at 355 (internal citations and quotations omitted); accord McKinney v. Pate, 20 F.3d 1550, 1565 (11th Cir.1994) (en banc).
1. The Continued Validity of Pure Prospectivity and the Chevron Oil analysis
Elisabeth argues that the Supreme Court has impliedly precluded the possibility of prospective only application and, at the very least, has invalidated the Chevron Oil test as the governing analytical framework for such determinations. We disagree.
Although prospectivity appears to have fallen into disfavor with the Supreme Court, see Harper v. Virginia Dep’t of Taxation, 509 U.S. 86, 94-99, 113 S.Ct. 2510, 2516-18, 125 L.Ed.2d 74 (1993); James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534-544, 111 S.Ct. 2439, 2442-2448, 115 L.Ed.2d 481 (1991); Griffith v. Kentucky, 479 U.S. 314, 320-328, 107 S.Ct. 708, 711-716, 93 L.Ed.2d 649 (1987), the Court has clearly retained the possibility of pure prospectivity and, we *1217 believe, has also retained the Chevron Oil test, albeit in a modified form, as the governing analysis for such determinations in civil cases. See Harper, 509 U.S. at 94-99, 113 S.Ct. at 2516-18.
In contrast, for newly announced rules governing criminal prosecutions, the Supreme Court has completely rejected both pure prospectivity, which occurs where a court gives a newly announced rule no retroactive effect, and modified prospectivity, which occurs where a court applies a newly announced rule retroactively on a case by ease basis. Griffith v. Kentucky, 479 U.S. 314, 320-28, 107 S.Ct. 708, 711-16, 93 L.Ed.2d 649 (1987); see also United States v. Calhoon, 97 F.3d 518, 529 (11th Cir.1996) (holding that United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held that materiality is a jury issue under statute criminalizing falsification or concealment of material fact, applied retroactively to appeal of pre-Gaudin convictions). However, while Griffith and subsequent criminal cases demonstrate the Supreme Court’s apparent disfavor of prospectivity generally, they are otherwise of limited application to the present case. As we recognized in McKinney, “[the] realm [of criminal cases] is wholly distinct (as far as retroac-tivity is concerned) from civil cases.” McKinney, 20 F.3d at 1566; see also American Trucking Assocs., Inc. v. Smith, 496 U.S. 167, 178-79, 110 S.Ct. 2323, 2331, 110 L.Ed.2d 148 (1990) (discussing inapplicability of Griffith in civil context); Griffith, 479 U.S. at 322 n. 8, 107 S.Ct. at 713 n. 8 (noting that “[civil retroactivity] continues to be governed by the standard announced in [Chevron Oil ]”). Accordingly, Griffith and other criminal cases provide little guidance to the retroactivity analysis in the civil context, beyond their support for the broad proposition that prospectivity is a disfavored exception to the general rule.
The dissenters rely almost exclusively on criminal cases based on their contention that James, and others similarly-situated, may face retroactive liability for punitive damages. However, no district court in this circuit has assessed punitive damages on James or anyone else, and neither the statutory language of Title III, nor our opinion today, compels any court to do so. The statute merely provides that a successful plaintiff in a civil action may recover inter alia “punitive damages in appropriate cases.” 18 U.S.C. § 2520(b)(2) (emphasis added). The question of what constitutes an “appropriate case” for punitive damages under Title III is not presently before us, and we cannot address it without having to speculate about what relief district courts might deem “appropriate” in this case, or in other similar cases. The dissenters’ analysis is therefore suspect in its reliance on criminal cases, and on the speculative possibility of a district court in the future assessing punitive damages on a past violator of Title III. Accordingly, we choose to rely on Supreme Court pronouncements arising in the civil context in assessing whether retroactivity is appropriate in the civil context.
The Supreme Court has retreated from, but has not abandoned, prospectivity in civil cases. See Harper, 509 U.S. at 94-99, 113 S.Ct. at 2516-2518; Beam, 501 U.S. at 534-544, 111 S.Ct. at 2442-2448. In Harper and Beam, the Supreme Court rejected modified prospectivity in civil cases. Harper, 509 U.S. at 94-99, 113 S.Ct. at 2516-2518; Beam, 501 U.S. at 534-544, 111 S.Ct. at 2442-2448. Harper and Beam both dealt with the question of whether a rule announced and applied retroactively in a prior case should be applied under pure retroactivity (ie., retroactive in all cases) or modified prospectivity (ie., retroactive only in some cases) in subsequent cases. The main principle for which Har *1218 per and Beam stand is that once a court applies a newly announced rule to the parties before it, all other courts must apply that rule to all pending cases. Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752, 115 S.Ct. 1745, 1748, 131 L.Ed.2d 820 (1995). Therefore, the limitation on pros-pectivity outlined in Harper and Beam is also of limited relevance here where we are confronted with the question of whether to apply a newly announced rule prospectively in the first instance.
Although Harper and Beam ruled out modified prospectivity, they did not alter the underlying validity of pure prospectivity or the Chevron Oil test. First, the Court’s primary reason for rejecting modified prospectivity was to prevent treating similarly-situated litigants differently by permitting “the substantive law [to] shift and spring according to the particular equities of [individual parties’] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule.” Harper, 509 U.S. at 97, 113 S.Ct. at 2517 (internal quotations omitted). The initial determination of whether to apply a new rule purely prospectively or retroactively does not implicate such concerns because both approaches treat all similarly-situated litigants the same and neither results in the “erection of selective temporal barriers to the application of federal law in noncriminal cases.” Id., 509 U.S. at 97, 113 S.Ct. at 2517. Therefore, we conclude that the reasoning behind the Court’s rejection of modified prospectivity in Harper and Beam does not impact the availability of pure prospectivity in civil cases.
Furthermore, both Harper and Beam implicitly affirmed the continuing relevance of the Chevron Oil test in initially determining whether a newly announced rule applies prospectively or retroactively. Although the Court splintered in Beam, producing no clear majority opinion, only Justice Scalia, joined by Justices Marshall and Blackmun, rejected the concept of pure prospectivity altogether. See Beam, 501 U.S. at 548-549, 111 S.Ct. at 2450-2451 (Scalia, J., concurring). Justice Souter’s opinion, joined by Justice Stevens, implicitly recognized the continuing validity of the Chevron Oil test by recognizing the limiting effect that Beam had on the test. Id., 501 U.S. at 543, 111 S.Ct. at 2447 (“Because the rejection of modified pros-pectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case.”). Justice White filed a concurring opinion in which he explicitly reaffirmed the relevance and applicability of the Chevron Oil test. Id., 501 U.S. at 544-547, 111 S.Ct. at 2448-2449 (White, J., concurring). Finally, Justice O’Connor filed a dissenting opinion joined by Chief Justice Rehnquist and Justice Kennedy wherein she specifically retained the option of prospectivity and reaffirmed that Chevron Oil was the analysis governing such determinations. Id., 501 U.S. at 549-553, 111 S.Ct. at 2451-53 (O’Connor, J., dissenting). Therefore, a majority of the Justices in Beam, albeit in two concurring opinions and in one dissenting opinion, reaffirmed, either implicitly or explicitly, the continuing validity of the Chevron Oil test.
In Harper, the Court adopted a rule that the majority said “reflect[ed] the position of a majority of [the] Justices in Beam ....” Harper, 509 U.S. at 97, 113 S.Ct. at 2517. In doing so, the majority merely reiterated the rule that once a court retroactively applies a newly announced rule in one case, the rule must be applied retroactively to all pending cases. Id., 509 U.S. at 97, 113 S.Ct. at 2517. In announcing this rule, the majority relied on language from and citations to Griffith that would tend to indicate a strong statement against pros-pectivity given the Court’s wholesale aban *1219 donment of prospectivity in criminal cases in Griffith. Id., 509 U.S. at 95, 113 S.Ct. at 2516. However, despite the majority’s reliance on Griffith, the Court in Harper did not reject the possibility of pure pros-pectivity and, in fact, appears to have implicitly reaffirmed the continuing validity of the Chevron Oil test by recognizing the manner in which Harper and Beam altered its application. Id., 509 U.S. at 95 n. 9, 113 S.Ct. at 2516 n. 9. Most significant is the fact that, although the Court adopted a position and language which moved the Court away from prospectivity, the Court did not take the final step toward a regime of pure retroactivity in all civil cases. Furthermore, the only opinion to take that step, a concurrence written by Justice Scalia, was not joined by any of the other Justices. See id., 509 U.S. at 102-110, 113 S.Ct. at 2520-24 (Scalia, J., concurring).
For the foregoing reasons, we conclude that we must still determine whether a newly announced rule in civil cases should apply retroactively or prospectively in the first instance and that Chevron Oil governs such a determination. Therefore, we now turn to the Chevron Oil analysis to determine whether the rule overruling Simpson, which we announce today, should apply retroactively or prospectively.
2. Chevron Oil analysis
As an initial matter, we recognize that both Harper and Beam preclude the use of subjective rebanee by particular litigants or the subjective evaluation of the equities in specific cases to resolve questions of prospectivity. Harper, 509 U.S. at 97, 113 S.Ct. at 2517; Beam, 501 U.S. at 543, 111 S.Ct. at 2447 (“Because the rejection of modified prospectivity precludes retroactive appbeation of a new rule to some btigants when it is not applied to others, the Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case.”). The requirement for objective evaluation of the impact of newly announced rules flows from the policy of treating all similarly-situated bti-gants in the same manner. This new analytical regime presents a problem for the question before us because both the second and third factors of the Chevron Oil test have traditionally been subjective in nature and, therefore, incompatible with the holdings of Harper and Beam. See McKinney, 20 F.3d at 1565 (stating that the second Chevron Oil factor requires that “the appbeation of the old rule in the instant case must not contravene the purpose and operation of the provision being interpreted” and that the third factor requires that the “appbeation of the new rule in the instant case must be inequitable” (emphasis added)). But see Beam, 501 U.S. at 543, 111 S.Ct. at 2447 (“[T]he Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case.”). Elisabeth suggests that this analytical shift toward objectivity counsels in favor of a wholesale rejection of Chevron Oil. We disagree.
In our view, the proper approach is to reconcile the Chevron Oil test with the Supreme Court’s move toward objectivity. By doing so, we recognize that the second and third prongs of Chevron Oil are properly viewed today as objective inquiries that examine the impact of a newly announced rule on the entire class of persons potentially affected by the new rule, rather than the impact on any specific litigant. See Beam, 501 U.S. at 543, 111 S.Ct. at 2448 (“The applicability of rules of law is not to be switched on and off according to individual hardship.... Of course, the generabzed enquiry permits btigants to assert, and the courts to consider, the equitable and reliance interests of parties absent but similarly situated.”). Therefore, we now turn to an analysis of the Chevron Oil factors.
*1220 We first look to whether our decision today “announce^] a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression the resolution of which was not clearly foreshadowed.” McKinney, 20 F.3d at 1565. Simpson has been the law of this circuit since 1974, and today’s ruling unequivocally abandons our previous interpretation of Title III. Therefore, the first prong of Chevron Oil is satisfied and weighs in favor of prospectivity because our decision today overrules “clear past precedent.” Id.
Second, we examine whether “retrospective operation will further or retard [the rule’s] operation.” Chevron Oil, 404 U.S. at 107, 92 S.Ct. at 355. We first note that the purpose of Title III is to “prohibit! ] all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials.... ” 1968 U.S.C.C.A.N. 2112, 2113. Title III partly effectuates this purpose by providing for a civil damages action for victims of illegal wiretapping. 18 U.S.C. § 2520. Applying the new Glazner rule retroactively would unquestionably further the purpose and operation of Title III by compensating past victims of illegal interspousal wiretapping and, at the same time, deterring those persons who are either currently wiretapping their spouses or planning to do so in the future. Furthermore, we fail to see how applying the statute retroactively would, in any way, retard its operation or purpose. In fact, we see more danger of retarding Title Ill’s operation and purpose by applying it prospectively-only. Therefore, we conclude that the second prong of the Chevron Oil analysis clearly weighs in favor of retroactive application.
We next turn to the third prong of the Chevron test: whether making the rule retroactive would be inequitable. Chevron Oil, 404 U.S. at 107, 92 S.Ct. at 355. In applying the rule that we announce today retroactively, the primary inequity is the potential for such retroactive application to create liability where none previously existed. If this were truly a situation where the class of persons affected by the new rule would suddenly face a strong likelihood of liability when they faced no possibility of liability before, we would be inclined to view the equities as weighing heavily in favor of pure prospective application. However, such is not the case here.
Every state in this circuit has made wiretapping of the sort in which James engaged a crime. Ala.Code § 13A-11-31 (1994); O.C.G.A. § 16-11-62 (1999); Fla. Stat. Ann. § 934.03(1) (2001). Violation of the Georgia wiretap statute is a felony that carries the penalty of one to five years in prison, up to a $10,000 fine, or both. O.C.G.A. § 16-11-69 (1999). Violation of the Florida statute is also a felony and carries a penalty of up to five years in prison, up to a $5,000 fine, and possible additional penalties for habitual felony offenders. Fla. Stat. Ann. §§ 934.03(4)(a) & 775.082 to .083 (2001). Furthermore, neither Georgia nor Florida appear to recognize a spousal exception to their wiretap statutes. See Middleton v. Middleton, 259 Ga. 41, 376 S.E.2d 368, 368-69 (Ga.1989); Markham v. Markham, 272 So.2d 813, 814 (Fla.1973).
Likewise, Alabama has made the recording of private communications a misdemeanor, AlaUode § 13A-11-31 (1994), and the installation of a wiretapping device a felony, AlaUode § 13A-11-33 (1994). A person violating these provisions faces up to one year in jail for the misdemeanor, and ten years in prison for the felony. AlaUode § 13A-5-6, 7 (1994). No Alabama state court has construed either of these statutes to encompass a spousal privilege, and the statutory language appears *1221 to preclude the existence of any such privilege. See Ala.Code § 13A-11-31, -33 (1994). Alabama law also allows an injured party to sue a tortfeasor for the commission of a crime amounting to a felony, even if the government does not prosecute the tortfeasor for the criminal violation. Ala.Code § 6-5-370 (1994). Furthermore, the Alabama Supreme Court has held that interspousal wiretapping violates Title III. Ex parte O'Daniel, 515 So.2d 1250, 1252-53 (Ala.1987).
Based on the law of every state in this circuit, any individuals falling within the class of persons affected by the rule we announce today would already necessarily have exposed themselves to significant criminal and potential civil liability under state law for engaging in the wiretap actions that would expose them to additional liability under Title III.[4] Even though retroactive application of the rule we announce today may result in alternative liability in federal court for this class, we conclude that this extension of liability is not sufficiently inequitable to justify prospective-only application given that the class would already be facing felony prosecution, imprisonment, fines, and potential civil liability under state law.
On balance, we conclude that the Chevron Oil test does not weigh in favor of prospective-only application of the new Glazner rule. Although the first part of Chevron Oil leans in favor.of prospective-only application, the second part weighs in favor of retroactive application and the third part does not weigh sufficiently in favor of prospective-only application to justify abandoning the “presumptively retroactive effect” of our decision today. Harper, 509 U.S. at 96, 113 S.Ct. at 2517. Accordingly, we apply the new Glazner rule retroactively[5] and hold that the former spousal privilege available under Simpson does not bar Elisabeth’s suit against James under Title III.
C. Conclusion
For the foregoing reasons, we overrule Simpson and hold that no interspousal wiretapping exception exists in Title III. We also hold that this new rule abolishing the interspousal exception in Simpson applies retroactively. Accordingly, we REVERSE the district court’s grant of James’s motion for summary judgment and REMAND this case for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

. The panel opinion was published in a later volume of the Federal Reporter because the original panel opinion, published at 316 F.3d 1185, was erroneously withdrawn and republished at 330 F.3d 1298.

. If Congress had disagreed with this interpretation, it has had many opportunities to add an explicit exception for interspousal wiretapping in the act. For whatever reason, Congress has chosen not to do so.

. Compare 18 U.S.C. § 2511 ("[A]ny person who — (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished ...”), with Ala. Code § 13A-11-31(a) ("[A] person commits the crime of criminal eavesdropping if he intentionally uses any device to eavesdrop, whether or not he is present at the time.”) and Ala. Code § 13A-11-33 ("[A] person commits the crime of installing an eavesdropping device if he intentionally installs or places a device in a private place with knowledge it is to be used for eavesdropping and without permission of the owner and any lessee or tenant or guest for hire of the private place.”) and Fla. Stat. Ann. § 934.03 (”[A]ny person who: (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication ... shall be punished ....”) and O.C.G.A. § 16-11-62 ("It shall be unlawful for: (1) Any person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place.”).

. "[R]es judicata and procedural barriers such as statutes of limitations” necessarily circumscribe the retroactive application of the rule we announce today. Beam, 501 U.S. at 535, 111 S.Ct. at 2443. And we express no view on whether the rule would apply retroactively insofar as criminal liability is concerned.